BANK OF HEMET, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 79–3188.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1980.

Decided April 24, 1981.

Terry S. Kaplan, Peter Collisson, Cohen & Ziskin, Beverly Hills, Cal., for plaintiff-appellant.

Robert S. Pomerance, Atty., Washington, D.C., argued, for defendant-appellee; Gilbert E. Andrews, Dept. of Justice, Washington, D.C., on brief.

Before GIBSON *, SNEED and SKOPIL, Circuit Judges.

SNEED, Circuit Judge:

This is a contest between two junior lien-holders arising because the security, while adequate to satisfy the debt of the senior lienholder, is not enough to satisfy the respective debts of each junior lienholder. Broadly speaking, the issues are which of the junior lienholders is to suffer the most and by what amount, if any, is each to suffer.

As of July 7, 1977, the appellant Bank of Hemet held a non-purchase-money second deed of trust on the property, a residence, to secure an indebtedness of $47,854.42; the government held tax liens against that residence junior to the Bank of Hemet deed of trust in the amount of $35,798.11; and a third party held the first deed of trust on the property securing a debt of $33,134.64. Apparently all debts were then due and owing. The third party initiated foreclosure and gave the Bank and the government notice sufficient to foreclosure their interests in the property. The foreclosure sale occurred on July 8, 1977, at which sale the Bank of Hemet bought the residence with a bid of $33,136.64, two dollars more than the amount of the first lien. On November 7, 1977, the government sought to exercise its right to redeem the property pursuant to 26 U.S.C. § 7425 by tendering to the Bank a check for $33,891.69, which is the amount of the Bank's bid plus interest at the statutory rate. To accept this offer would leave the Bank without a practical means to recover its debt. The Bank, however, eventually accepted the government's check, reserving all rights to contest the tender. It then filed its complaint in the district court on January 4, 1978 and effected service on the government on February 14, 1978. On January 30, 1978, the government sold the redeemed property, the residence, to a purchaser for $55,000. This amount, while greater than that tendered to Bank of Hemet, was less than the sum of the first and second liens on the property as of July 7, 1977.

In its January 4, 1978 complaint, the Bank of Hemet sought to restrain the sale of the property, declaratory relief to quiet title to the property in the Bank, and damages. The Bank also contended that the amount tendered to it was improper under 26 U.S.C. § 7425, and, in the alternative, that the redemption constituted a taking of property without just compensation in violation of the Fifth Amendment to the Constitution. The government for its part contested the Bank's claims and asserted that the district court had no jurisdiction because there was no applicable waiver of sovereign immunity.

After a hearing, the district court found that it had jurisdiction, but granted the government's motion for summary judgment. The Bank filed a timely notice of appeal on January 22, 1979. This court has jurisdiction under 28 U.S.C. § 1291. We reverse and remand for findings in accord with this opinion.

I.

SUMMARY OF ARGUMENTS

Three major questions confront us: Was there a waiver of the sovereign immunity under which jurisdiction was proper in the district court? Do the redemption provisions of 26 U.S.C. § 7425 and 28 U.S.C. § 2410, as applied here, deprive Bank of

---

* Honorable Floyd R. Gibson, Senior Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Hemet of its property without just compensation in violation of the Fifth Amendment? Did the provisions of 26 U.S.C. § 7425 and 28 U.S.C. § 2410 require the government, in its IRS capacity, to tender $33,891.69, plus interest, or some other amount?

With respect to the first question, the government argues that, because it had sold the residence before the Bank of Hemet effected service of process, the waiver of immunity for suits seeking to quiet title to property in which the United States claims an interest, 28 U.S.C. § 2409a, is inapplicable. The Bank, on the other hand, argues that the United States claimed title to the residence at the time they commenced suit and that their failure to effect service of process prior to the sale of the property was due to the tardiness of the United States Marshal in carrying out the procedure for service on the United States and to the refusal of agents of the United States to accept service at the sale of the property.

As to the Fifth Amendment issue, the Bank argues that, because 26 U.S.C. § 7425 and 28 U.S.C. § 2410 permit the United States to acquire property from a purchaser at a foreclosure sale for less than its fair market value, redemptions under those sections constitute takings of private property without just compensation. The government responds by asserting that the Bank's argument begs the question. What property the Bank acquired at the foreclosure sale is the precise issue this case presents. To find a taking requires that the issue be resolved wholly in the Bank's favor, while a finding for the government eliminates the possibility of a taking.

The Bank, in keeping with its insistence that its debt in some manner be discharged in full, contends that under California law it is not entitled to a deficiency judgment against its debtor, the owner of the foreclosed residence, and that 28 U.S.C. § 2410 accordingly requires that, disregarding interest, the government tender to the Bank the sum of its bid on the property at foreclosure ($33,136.64), plus the amount of the unrecoverable deficiency. This sum is the "amount" it paid for the property, the Bank insists, and the purpose of section 2410 is to provide reimbursement of that amount.

For its part the government insists the Bank, a second lienholder who purchased at the foreclosure sale for the benefit of the first lienholder, is not precluded by California law from seeking a deficiency judgment against its debtor and that as a consequence the amount it tendered to the Bank is all that is required under 28 U.S.C. § 2410 and 26 U.S.C. § 7425.

We shall address each of these arguments separately.

## II.

## SOVEREIGN IMMUNITY

■ To sue the United States, Congress must have waived sovereign immunity with respect to the claim being asserted and provided jurisdiction to hear the claim in the court in which the suit is brought. The Bank finds the required waiver of sovereign immunity in 28 U.S.C. §§ 2409a, 2410, or 26 U.S.C. §§ 7425, 7426, and jurisdiction in the district court under 28 U.S.C. §§ 1331, 1340.

Both the Title 28 sections appear applicable to the sovereign immunity issue. Section 2409a permits the United States to be "named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." Section 2410 permits the United States to be named a party in a suit "to quiet title to" real property "on which the United States has or claims a mortgage or other lien." Somewhat less directly applicable are 26 U.S.C. §§ 7425 and 7426 which are designed primarily to delineate and protect the rights of the government and third parties when property is sold to satisfy the claims of others.

Unfortunately, none of these provisions fit precisely the situation with which we are confronted. Section 2409a comes closest. The government rejects its application because, although it had possession of, and an interest in, the property at the time the Bank filed its complaint, nothing of the sort existed at the time service was effected on February 14, 1978. The sale occurred on January 30, 1978 and the government thereafter held only the proceeds.

■ We are unconvinced by the government's position. The Bank correctly points out that the United States claimed an interest in the property at the time the complaint was filed and that it had filed a lis pendens on the property prior to the January 30, 1978 sale. It also appears that the Bank gave notice of the pendency of this suit at the time of the sale and that the Treasury agents conducting the sale refused service of the complaint. The Bank also asserts that its failure to effect service on the United States prior to the sale was caused by the U.S. Marshall.

We hold that under the circumstances of this case the presence of a waiver of sovereign immunity should be determined as of the date the complaint was filed, *viz*, January 4, 1978. The time is long past when the bar of sovereign immunity should be preserved through strained and hyper-technical interpretations of the relevant acts of Congress. Not only does this interpretation

permit the Bank to have its day in court, it also restrains any tendency on the part of the government to manipulate its position subsequent to the filing of the complaint so as to present a situation that falls between the cracks of applicable waiver statutes.

■ Therefore, because at the time the Bank filed suit the United States claimed title to the property, we find that 28 U.S.C. § 2409a waived the immunity of the United States to the Bank's quiet title action.[1] Jurisdiction poses no problems. Section 1346(f) of Title 28 confers exclusive jurisdiction on the federal district courts over actions brought under 28 U.S.C. § 2409a.[2] The district court did not err in holding that it had jurisdiction.

## III.

### THE FIFTH AMENDMENT

■ The contention that there was a taking proscribed by the Fifth Amendment

---

1. Concomitant with a finding of a waiver under section 2409a is a finding that suit could not have been brought under 28 U.S.C. §§ 1346, 1347, 1491, or 2410 or 26 U.S.C. §§ 7424, 7425, or 7426. 28 U.S.C. § 2409a. Because 28 U.S.C. § 1346(f) confers on the district courts exclusive jurisdiction over actions brought under 28 U.S.C. § 2409a, we read that reference to § 1346 in § 2409a to refer to § 1346(a)–(e). Only 28 U.S.C. §§ 1491, 2410 and 26 U.S.C. §§ 7425, 7426 could possibly apply to Bank of Hemet's claim.

Section 2410 allows joinder of the United States as a party to actions affecting property on which the United States has a lien. The United States' lien on the Bonhus residence was foreclosed by the senior mortgageholder's foreclosure sale, and § 2410 does not apply to property in which the United States claims only title. *Bertie's Apple Valley Farms v. United States*, 476 F.2d 291 (9th Cir. 1970).

Section 1491 of Title 28 is the basic jurisdictional grant to the Court of Claims. Despite language in recent amendments giving the Court of Claims the power to order certain collateral remedies in cases within its jurisdiction, the United States Supreme Court has found that the Court of Claims' jurisdiction remains limited to claims for money damages presently due and owing. *See United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Such jurisdiction does not encompass appellant's claim for quiet title.

Section 7425 contains no explicit waiver of sovereign immunity. Because violations of its procedural requirements can be challenged under the explicit waivers of 28 U.S.C. §§ 2409a, 1491, no implied waiver of immunity can be found under that section. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969).

Section 7426 permits an action against the United States for wrongful levy by a person on whose property the government has levied to satisfy someone else's tax assessment. "The term 'levy' includes the power of distraint and seizure by any means." 26 U.S.C. § 7701(a)(21). We find that the procedural requirements for levies embodied in 26 U.S.C. §§ 6331–44 make it clear that the term levy does not encompass the redemption procedure of 26 U.S.C. § 7425 and 28 U.S.C. § 2410.

2. This case falls within the jurisdictional grants under both 28 U.S.C. § 1331 and 28 U.S.C. § 1340 as argued by appellant. Section 1331 grants to the district courts jurisdiction over suits against the United States arising under the Constitution, laws, or treaties of the United States. Section 1340 grants to the district courts jurisdiction over civil action arising under acts of Congress providing for the internal revenue—26 U.S.C. § 7425 is part of such an act. We rely on 28 U.S.C. § 1346(f) because it is the narrowest and most directly applicable ground of jurisdiction covering the instant case.

need not long detain us. When real property on which the United States has a tax lien is sold by means other than a judicial sale to satisfy a lien prior to that of the United States, 26 U.S.C. § 7425(d) authorizes the Secretary of the Treasury for a period of 120 days to redeem the property by paying to the purchaser the amount specified by 28 U.S.C. § 2410(d). This amount includes at least the purchase price plus interest from the date of the purchase. Whether it includes more will be discussed subsequently. The Bank claims that the formula for compensation of section 2410(d) fixes the amount of compensation without regard to the fair market value. The Bank's assertion would be correct were it true that following the foreclosure it owned the property in fee simple without encumbrances. Unfortunately for the Bank, it is clear that whatever its interest in the property was following foreclosure, that interest was subject to the government's right of redemption under 26 U.S.C. § 7425(d). Because this provision was enacted in 1966, long before the Bank's interest in the property came into existence, there can be no question of retroactivity. Whatever the Bank acquired as a result of the foreclosure sale was subject to the government's section 7425(d) right of redemption. For this reason the Bank can derive no comfort from those cases that have limited the application of redemption statutes to mortgage relationships that came into being subsequent to the enactment of such statutes. *See Hooker v. Burr*, 194 U.S. 415, 24 S.Ct. 706, 48 L.Ed. 1046 (1904); *Barnitz v. Beverly*, 163 U.S. 118, 16 S.Ct. 1042, 41 L.Ed. 93 (1896); *Howard v. Bugbee*, 65 U.S. (24 How.) 461, 16 L.Ed. 753 (1860); *Bronson v. Kinzie*, 42 U.S. 288, 1 How. 311, 11 L.Ed. 143 (1843).

## IV.

### AMOUNT PAYABLE IN REDEMPTION

A. *The Manner in Which Section 2410(d) Operates.*

We now address the controlling issue of this case, *viz.*, the amount the government

should have paid to exercise its right of redemption under section 2410(d). The pertinent portion of this section is as follows:

> [T]he amount to be paid for such property shall be the sum of—
>
> (1) the actual amount paid by the purchaser at such sale (which in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale).

The parenthetical portion of the above section is further developed in Treas. Reg. § 301.7425–4(b)(2)(ii) in the following manner:

> In the case of a purchaser who is the holder of the lien being foreclosed, the actual amount paid is the sum of (A) the amount of the obligation secured by such lien to the extent legally satisfied by reason of the sale and (B) any additional amount bid and paid at the sale.

These provisions function in a very straightforward fashion when only a single lienholder senior to the government is involved. Thus, foreclosure by the senior lienholder of a debt of $1000 against property having a fair market value of $2000 by a payment of $500 plus the discharge of the $1000 debt means that the "actual amount paid by the purchaser" for purposes of redemption by the government under section 2410(d) is $1500. The "(A) portion" of this amount is $1000, while the "(B) portion" is $500.

The situation is much less clear where more than one lienholder is senior to the government. Assume, for example, that the first lienholder is secured to the extent of $500 and the second to the extent of $1000 and, as before, the fair market value of the property is $2000. At a sale foreclosing the interest of the first lienholder the holder of the second lien purchases the property for $500. The amount that the government must pay to exercise its right of redemption poses no problem provided the lien of the purchasing second lienholder

is not discharged by his purchase. There is no "(A) portion" of the "amount paid by the purchaser." The "(B) amount" is $500 which is the redemption price under section 2410(d). The second lienholder retains, however, a claim against his debtor of $1000, the value of which will depend upon the circumstances of each case.

The difficult problem arises when, under applicable law, the second lien is discharged by the purchase of the second lienholder at the sale foreclosing the first lien. Such may be the result when local law proscribes the second lienholder's right to a judgment for a deficiency against his debtor. Under these circumstances, the government here suggests that the "(A) portion" of the second lienholder's payment is $1000, the amount of its extinguished lien, and that the "(B) portion" is zero. The redemption price, therefore, is $1000. To support its position the government insists that the "(B) portion" embraces only the amount by which the amount paid exceeds the amount of the *purchaser's* lien discharged. Because under the assumed figures the amount paid ($500) did not exceed the amount of the second lienholder's discharged lien ($1000), "the amount to be paid" on redemption is $1000.

Understandably, the Bank takes strong exception to this view. In one sense, the issue is whether the amount paid to discharge the first lienholder's claim ($500) is an "(A) portion," a "(B) portion," or neither. We believe it should be treated as an "additional amount bid and paid at the sale," i. e., a "(B) portion." An alternative would be to treat the sum of the amounts paid to discharge both liens ($500 + $1000 = $1500) as the effective "(A) portion." However, treatment as a "(B) portion" strikes us as a more natural reading of the regulation.

Now we must ascertain the extent, if any, to which under California law the Bank's second lien was discharged by its purchase at the foreclosure of the first lien.

### B. *Bank's Right To a Deficiency Judgment: Does It Exist?*

All agree that California law governs the question whether the Bank upon its purchase at the foreclosure sale of the first lien sacrificed its claim against the debtor. The applicable portion of California law consists of that which governs the right of a creditor with a security interest in real property to obtain a deficiency judgment following resort to the security. Four provisions of the California Code of Civil Procedure possibly are controlling: sections 580a, 580b, 580d and 726 (West 1976). Of these, two are clearly inapplicable to the facts of this case. Section 580b applies only when the lien involved secured at least a portion of the purchase price of the encumbered property. The Bank's lien is unrelated to the purchase price. Section 726 is also inapplicable because it pertains only to judicial foreclosure sales. This leaves only sections 580a and 580d.

1. Section 580d.

Section 580d, to which we turn first, provides in relevant part as follows:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such mortgage or deed of trust.

Cal.Civ.Pro.Code § 580d (West 1976). This provision has been interpreted by California courts as inapplicable to holders of second liens who do not purchase at non-judicial foreclosure sales initiated by the senior first lienholder. *See Roseleaf v. Chierighino*, 59 Cal.2d 35, 378 P.2d 97, 27 Cal.Rptr. 873 (1963); *Lange v. Aver*, 241 Cal.App.2d 793, 796, 50 Cal.Rptr. 847 (1966).

This result, suggested but not required by the statutory language, was based upon the perceived legislative purpose of the section. To understand this purpose it must be pointed out that prior to the enactment of section 580d, creditors who employed judicial foreclosure sales were confronted with debtors who had a right of redemption provided by section 725a of the California Civil Procedure Code. This tended to insure that

bids at the sale approximated the fair market value of the property. No such right existed with respect to non-judicial foreclosure sales; therefore, no equivalent incentive to make bids approximate value existed. According to the court in *Roseleaf*, section 580d was enacted to provide the equivalent incentive by depriving the foreclosing creditor of any right to a deficiency judgment. Furthermore, the *Roseleaf* court held this purpose would not be served by applying section 580d to non-selling junior lienholders. This result was reached despite the fact that non-selling junior lienholders who, as in this case purchase at the senior lienholder's sale, are not encouraged to bid an amount approximating the fair market value in the absence of a check equivalent in function to either the right of redemption or the loss of the right to a deficiency judgment. Occasionally competitive bidding will supply the check but, as this case perhaps demonstrates, that will not be present in all instances.

### 2. Section 580a.

Section 580a governs the availability of deficiency judgments which are "sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, ..." [3] In effect, it requires the creditors who seek such judgments to limit their recovery to the amount by which the debt exceeds the fair market value of the real property and in no event to exceed the difference between the amount for which the property was sold upon foreclosure and the entire amount of the secured debt.

The *Roseleaf* Court did not treat this provision as superceded by section 580d and also held it to be inapplicable to "nonselling junior lienors." 59 Cal.2d at 41, 378 P.2d at 100, 27 Cal.Rptr. at 876. The court explained:

> The position of a junior lienor whose security is lost through a senior sale is different from that of a selling senior lienor. A selling senior can make certain that the security brings an amount equal to his claim against the debtor or the fair market value, which ever is less, simply by bidding in for that amount. He need not invest any additional funds. The jun-

---

**3.** Section 580a provides:

Whenever a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. Upon the application of either party made at least 10 days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the inheritance tax referees provided for by law to appraise the property or the interest therein sold as of the time of sale. Such referee shall file his appraisal with the clerk and the same shall be admissible in evidence. Such referee shall take and subscribe an oath to be attached to the appraisal that he has truly, honestly and impartially appraised the property to the best of his knowledge and ability. Any referee so appointed may be called and examined as a witness by any party or by the court itself.

The court must fix the compensation of such referee in an amount as determined by the court to be reasonable, but such fees shall not exceed similar fees for similar services in the community where such services are rendered, which may be taxed and allowed in like manner as other costs. Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of said judgment, exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by said deed of trust or mortgage. Any such action must be brought within three months of the time of sale under such deed of trust or mortgage. No judgment shall be rendered in any such action until the real property or interest therein has first been sold pursuant to the terms of such deed of trust or mortgage, unless such real property or interest therein has become valueless.

ior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing.

Extended to the facts of this case, the above language would leave the Bank's right to a deficiency judgment unimpaired and there would exist no "(A) portion" of the sum the government must pay on redemption under section 2410(d). This case is, however, distinguishable from *Roseleaf* in that here the junior lienholder did bid on and purchase the property which, strong evidence suggests, at the time had a fair market value substantially in excess of the amount of the senior lienholder's debt. In brief, the Bank was not a sold-out junior lienholder as was the case in *Roseleaf.*

The crucial issue is whether this difference requires that section 580a be applied to the Bank. We hold that it does. It follows that its right to a deficiency judgment may be limited. To so limit the deficiency judgment right is consistent with the general purpose of section 580a, *viz.,* to protect against a lienor buying in the property at a deflated price, obtaining a deficiency judgment, and achieving a recovery in excess of the debt by reselling the property at a profit. Not to apply section 580a to the Bank under facts of this case would create the distinct possibility of an excess recovery in the absence of the government's intervention.

Application of section 580a requires the imposition of a gloss thereon due to the fact that "the entire amount of the indebtedness due at the time of sale" must include both senior and junior lienholders' debt when the junior lienholder chooses to bid on and purchase the property at the sale initiated by the senior lienholder. Only to the extent the combined debts exceed the fair market value of the property should a deficiency

judgment be permitted. In addition, in no event should the deficiency judgment exceed the amount by which the combined debts are greater than the amount for which the property was sold.

Utilization of section 580a so glossed with respect to the facts of this case may appear to constitute an improper creation of California law by a federal court. We believe the appearance is contrary to the facts. The unmistakable policy of California is to prevent excess recoveries by secured creditors. To refuse to apply this policy, together with its implications and refinements, to the facts of this case because such facts fit section 580a's language somewhat awkwardly and because of the result reached by the California court in *Roseleaf* would amount to rejection of the spirit of California's law in favor of its letter. We decline to do this.

▪ Application of section 580a to the facts of this case has a somewhat surprising result. It eliminates the possibility of the Bank being entitled to a deficiency judgment without regard to the fair market value of the property at the time of the foreclosure sale. This is true because the record does not indicate any action to recover a deficiency was brought by the Bank within three months of the sale as required by the penultimate sentence of the section.

This poses a difficult issue: Should the "(A) portion" of the redemption price required to be paid by the government, pursuant to section 2410(d) and the applicable regulation, include the entire amount of the Bank's debt, in recognition of its loss pursuant to section 580a of any right to a deficiency judgment, or only that amount by which the fair market value of the property at the time of the foreclosure of the first lien exceeded the price paid by the Bank for the property? Posing the issue in this fashion makes clear, as did our previous discussion of California's section 580a, that we reject treating the entire amount of the Bank's debt as unaffected by the foreclosure sale at which it purchased the property. To adopt that position would require the application of *Roseleaf* to a situation

not within the *ratio decidendi* of that decision. Our choice, therefore, is as stated.

We reject treating the entire debt of the Bank as an obligation "satisfied by reason of such sale." To the extent, if any, the Bank's debt was eliminated by its failure to seek a deficiency judgment pursuant to section 580a it is not possible to say that that portion was "satisfied by reason of such sale." Its destruction came about because of events subsequent to the sale. Thus, we conclude that, by reason of the application of section 580a to the Bank's purchase at the foreclosure sale of the first lienholder's security interest, the amount of the Bank's debt "satisfied by reason of such sale" is the amount by which the fair market value of the property at the time of the sale exceeded the amount paid by the Bank for the property at the time of the sale. This is the "(A) portion" of the section 2410(d) redemption price while the amount paid by the Bank for the property of the sale is the "(B) portion."

### V.

### DISPOSITION AND INSTRUCTIONS ON REMAND

For the reasons already stated we must reverse the judgment of the district court. The Bank is not entitled to have quiet title in the property awarded to it. The property has been sold and the purchaser is not a party to this suit. The Bank, however, is very likely entitled to be paid by the government by reason of its redemption a price in excess of that which was tendered and received by the Bank under protest. The redemption price to which it is entitled pursuant to section 2410(d) is, to repeat, that amount by which the fair market value of the property at the time of the sale exceeded the amount the Bank paid to purchase the property, plus that purchase price paid by the Bank to acquire the property at the foreclosure sale, plus such interest as is proper. In no event, of course, can this redemption price exceed the sum of the Bank's debt and the foreclosure sale purchase price. We remand to the district court to determine what additional amount,

if any, the Bank is entitled to receive from the government by reason of its redemption pursuant to 26 U.S.C. § 7425 and 28 U.S.C. § 2410.

Reversed and Remanded.