**BOROUGH OF MAYWOOD, Plaintiff,**

v.

**UNITED STATES of America, et al.**

**STEPAN COMPANY, Plaintiff,**

v.

**TOWNSHIP OF ROCHELLE PARK PLANNING BOARD, et al.**

**STEPAN COMPANY, Plaintiff,**

v.

**BOROUGH OF MAYWOOD PLANNING BOARD, et al.**

Civ. A. Nos. 85–5745, 86–3696 and 87–1852.

United States District Court, D. New Jersey.

Jan. 25, 1988.

**414**

Seymour Chase, Chase & Chase, Hackensack, N.J., for Borough of Maywood.

John Lamb, James Kosch, Lamb & Corcoran, Hackensack, N.J., for Borough of Maywood Planning Bd.

Jay Atkins, Draesel, Sunshine, Atkins, Minassian & Tafuri, Oradell, N.J., for Rochelle Park Tp.

Berek Don, County Counsel, Hackensack, N.J.

Sheldon Shiffman, Short Hills, N.J., Kathryn A. Oberly, Percy L. Angelo, Mayer, Brain & Platt, Washington, D.C., Richard L. Jacobson, Heller, Ehrman, White & McAuliffie, Palo Alto, Cal., for Stepan Co.

Jeffrey D. Smith, Asst. U.S. Atty., Newark, N.J., for Dept. of Energy.

## OPINION

HAROLD A. ACKERMAN, District Judge.

THE COURT: This matter is before the Court on motions of Stepan Company and the Department of Energy ("DOE") for judgment on the pleadings in an action entitled *Borough of Maywood v. United States*, Civil Action No. 85–5745, and for summary judgment in simultaneously pending proceedings captioned *Stepan Company v. Township of Rochelle Park*, Civil Action No. 86–3696 and *Stepan Company v. Borough of Maywood Planning Board*, Civil Action No. 87–1852.

On December 12, 1985 the Borough of Maywood filed the original complaint seeking the Court to, *inter alia*, set aside a conveyance made by Stepan Company to the United States and declare as void the deed dated September 23, 1985, which embodies this conveyance because Stepan and the government have failed to obtain prior site plan and subdivision approval as assertedly required by state statute and local ordinances.

Subsequently submitted applications were denied and so on June 26, 1986, and April 16, 1987, Stepan filed suit in state

court against the Planning Boards of the Township of Rochelle Park and the Borough of Maywood, respectively, to set aside their denial of these subsequently filed applications.

Following removal from the Superior Court of New Jersey, on June 5, 1987, United States Magistrate G. Donald Haneke ordered that the civil actions entitled *Stepan v. Rochelle Park* and *Stepan v. Maywood* be consolidated for all purposes with the civil action of *Borough of Maywood v. United States* to better serve "the interests of justice and of judicial and litigant economy."

On June 23, 1987, Magistrate Haneke ordered, with the consent of all parties, that the United States be realigned as a nominal plaintiff in the proceedings against Maywood and Rochelle Park.

On October 2, 1987, Stepan Company filed the present motions for judgment on the pleadings and for summary judgment. Similarly, on that date, the United States filed its motions for judgment on the pleadings and for summary judgment and has acknowledged that it will rely on the arguments and exhibits submitted by Stepan.

According to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." If, however, "on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Since the movant relies on and has submitted matters beyond those contained in the pleadings and since these matters have been considered by the Court, I must view all of the motions under the summary judgment standard of Rule 56. *See* Federal Rule of Civil Procedure 12(c).

Summary judgment may only be granted if, drawing all inferences in favor of the nonmoving party, the pleadings, dispositions, answers to interrogatories, affidavits and admissions on file demonstrate that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.), *cert. dism'd*, —— U.S. ——, 108 S.Ct. Page 26, 97 L.Ed.2d 815 (1987). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or it will be defeated on the motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Federal Rule of Civil Procedure Rule 56(e)).

Since this motion is before me in the nature of summary judgment, I will view the facts in a light most favorable to the nonmovants. *T.J. Trauner Associates v. Cooper–Benton, et al.*, 820 F.2d 643 (3d Cir.1987).

Viewing the essentially undisputed facts in this way, I find that:

From the early twentieth century until 1959, Maywood Chemical Works operated a chemical plant at 100 West Hunter Avenue, Maywood, New Jersey. The company manufactured a variety of products utilizing thorium, a radioactive material. During World War II, thorium products were produced for the Navy and radioactive waste material had been stored on unused portions of the Maywood property.

In 1959, the plant and the land surrounding it acquired by Stepan Company. In the early 1980s, thorium wastes were discovered to be emanating unacceptable levels of radiation. Pursuant to the fiscal year 1984's Energy and Water Appropriations Act, Congress directed the United States Department of Energy to decontaminate the site and acquire a portion of the site for temporary storage of the radioactive waste removed from nearby contaminated residential properties.

On August 10, 1984, the DOE entered into a Memorandum of Understanding with the Borough of Maywood which delineated the actions the DOE expected to engage in

at the Maywood site. Specifically, the memorandum provided that, 1.) only radioactive wastes originating within the Borough of Maywood or Township of Rochelle Park would be deposited at the interim storage area; 2.) permanent disposal of the waste would be made at a site outside the Borough; and 3.) pending permanent disposal, the DOE agreed to monitor the site and take steps to prevent the discharge of contaminated waste.

On June 15, 1985, Stepan and the DOE entered into a cooperative agreement in which the DOE agreed to perform the decontamination work in consideration for Stepan's donation of a parcel of its land plus $580,000. Specifically, the agreement included a provision by which Stepan agreed to "convey to the DOE by general warranty deed, for and in consideration of one (1) dollar, a parcel of land from its Maywood site, which shall be used by the DOE as a storage site for the project work." *See* Cooperative Agreement, dated June 15, 1985, Article VI, Paragraph A, Page 5, attached as Exhibit A to the motion of Stepan Company.

The land, fully described in Appendix A to the Cooperative Agreement, totals 11.71 acres and straddles the border of the Township of Rochelle Park and Borough of Maywood.

On September 23, 1985, the sale of this parcel was completed. *See* Exhibit H to Stepan's motion. Stepan continues to own the remainder of the site.

On October 4, 1985, Stepan submitted "a pro forma post facto" preliminary plan for subdivision to the Maywood Planning Board. *See* Exhibit D to Stepan's brief.

A similar plan was later submitted to the Township of Rochelle Park. Both Maywood and Rochelle Park denied the request for subdivision and site plan approval.

On March 9, 1987, Maywood issued a statement which embodied the basis upon which it denied Stepan's applications. The primary reasons are as follows:

1.) Stepan's application was made as "a fait accompli" after the conveyance had occurred and without seeking approval for the resulting subdivision from either the Planning Board of Maywood or Rochelle Park and thereby violated Article IV, Subarticle II, Section 2 of the local zoning ordinances.

2.) Stepan's application for subdivision and proposed site plan was incomplete since it lacked, among other things, the approval of the County Conservation District, Borough Engineer, New Jersey Department of Environmental Protection and the Board of Health.

3.) Stepan failed to obtain the use variance from the Borough's Board of Adjustment as required under Article II, Section 10 of the zoning ordinances since its conduct would violate the ordinance which prohibits the storage of radioactive materials.

4.) Apparently, the Planning Board questioned both the adequacy of the storage tanks and the temporary nature of the storage site in the Borough.

5.) The storage of radioactive materials obtained from locations outside the municipalities respective borders violated the Memorandum of Understanding between the Borough and the DOE.

6.) Stepan failed to comply with the above mentioned ordinances despite its acknowledgement in the deed between it and the DOE that the conveyance was subject to all local zoning and planning board ordinances and regulations.

On April 16, 1987, Stepan filed suit to set aside this decision.

Stepan and the DOE currently seek dismissal of all of the aforementioned court proceedings through entry of summary judgment. In support of their motions, Stepan and the DOE argue that this court lacks subject matter jurisdiction to resolve the controversy at issue in *Maywood v. United States* since the government has not waived its sovereign immunity and the court lacks jurisdiction over the remaining defendants.

First, they argue that 28 U.S.C. Section 2409a provides a basis for construing a waiver of sovereign immunity only when the plaintiff in the action claims an interest in the property. Since Maywood has no

such interest, right or title in the property, 2409a does not serve as a basis for waiving the government's sovereign immunity.

Relatedly, plaintiffs assert that since 28 U.S.C. Section 1346 confers jurisdiction in the district court only when 2409a provides a basis for waiving sovereign immunity and since no such waiver has occurred, it too fails to confer jurisdiction. Similarly, movants argue that 28 U.S.C. Section 2410 is inapplicable since the provision waives immunity only as to actions with respect to property in which the government claims a mortgage or lien. Again, since the government owns the property free and clear of any liens, this provision does not apply.

Stepan and the DOE argue that they are entitled to summary judgment with respect to their suits against the two municipalities because these entities are barred from denying the applications for subdivision and site approval because such decisions are preempted by federal law and are, therefore, void. Relying on the supremacy clause, Stepan and the DOE assert that the congressional directive to clean up the Maywood site and use it as a temporary storage site preempts since the local regulations stand as obstacles to the actualization of Congress' command to decontaminate the site. Furthermore, since the DOE is acting pursuant to a Congressional delegation of authority and since its task is to implement Congress' clean-up directive, its regulations and decisions must be deferred to and given preemptive effect.

Moreover, Stepan and DOE assert that they have not waived their right to assert federal preemption despite language in the deed which states that the conveyance "shall be subject to ... local zoning and planning board ... [and] ... the terms and conditions of the ... Cooperative Agreement." The movants point out that the Cooperative Agreement provides that Stepan "has no obligation to ... abide by any non-federal law, regulation or ordinance, which is preempted by federal law." The movants argue that this language preserves their ability to assert the preemption doctrine to eliminate any local impediments to the project. Finally, they argue

that any allegation that the DOE agreed to abide by the terms dictated by local planning boards would be *ultra vires* and, therefore, void.

In response, the Borough of Maywood Planning Board, joined by the Borough of Maywood and the Township of Rochelle Park, argued that the local agency's decision regarding Stepan's application is entitled to a presumption of validity and correctness and can be overturned only if arbitrary and capricious.

They further argue that compliance with both state and federal law is not impossible and that state law does not pose an obstacle to the fulfillment of the Congressional objective.

In addition, they assert that since the site is also subject to the regulations established under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. Section 9601, *et seq.*, and since that act expressly rejects preemption, the similar intent of the Congressional directive at bar makes it untenable that the local regulations would be preempted in this case.

The nonmovants further assert that the movants agreed to comply with the local ordinances, and even if the government is immune, the local incidence of the ordinances fall upon Stepan, as owner of the property to be divided, rather than on the United States and, therefore, the regulation is not barred by the supremacy clause.

The nonmovants further argue that questions of intent with respect to the Planning Board's denial of the application, the nature of the various agreements and the applicability of various local ordinances to the transaction preclude entry of summary judgment.

Finally, nonmovants assert that this Court has jurisdiction over the within action against Maywood and the United States pursuant to 28 U.S.C. Section 2409a since the government is now the owner of the property in dispute and thereby waived its sovereign immunity and thus jurisdiction is vested in the district court pursuant to 28 U.S.C. Section 1346(f).

I will first address movants' motion to dismiss the civil action entitled *Borough of Maywood v. United States, et al.,* Civil Action No. 85–5745, for lack of jurisdiction.

 To sue the United States, Congress must have waived the government's sovereign immunity with respect to the claim being asserted and provided jurisdiction to hear the claim in the court in which the suit was brought. *Bank of Hemet v. United States,* 643 F.2d 661, 664 (9th Cir. 1981).

Apparently, the Borough of Maywood asserts that the required waiver is embodied in 28 U.S.C. Section 2409a and 2410, and jurisdiction in the district court lies pursuant to 28 U.S.C. Section 1346(e).

Section 2409a(a) and (c) of that title provides that:

(a) The United States may be named as a party defendant in a civil action under this section to *adjudicate a disputed title* to real property in which the United States claims an interest ...

(c) The complaint [must] *set forth* with particularity the nature of the right, title or *interest which* the *plaintiff claims* in the real property, the circumstances under which it was acquired *and* the right, title or *interest claimed by the United States.*

(Emphasis added).

Pursuant to Section 2409a, Congress embodied a waiver of the government's sovereign immunity to allow the United States to be made a party in actions brought in district courts to quiet titles to lands in which the government claims an interest. *See Fulcher v. United States,* 632 F.2d 278, 281–283 (4th Cir.1980). Upon waiver, the Congress vested, pursuant to 28 U.S.C. Section 1346(f), original jurisdiction in the district court to resolve such actions. Section 1346(f) of Title 28 provides that:

"The district court shall have exclusive original jurisdiction of civil actions under 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States."

Read together, these provisions waive the government's sovereign immunity and vest the district court with jurisdiction to "adjudicate a disputed title to real property." *See Prater v. United States,* 612 F.2d 157, 159 (5th Cir.1980); *Bank of Hemet, cited supra,* 643 F.2d at 665, n. 1. This, however, is not an action to quiet title. Since the complaint fails to reveal any allegations that the suit seeks the adjudication of a disputed title, Sections 2409a and 1346(f), even construed broadly, fail to provide a basis upon which this Court may assert jurisdiction.

Even if I were to read this action as one in which the parties seek to resolve a disputed title, I do not find that the plaintiff Borough may assert such a claim since it has no right or title in the property. Section 2409a arguably only waives sovereign immunity in actions brought by one with a property interest in the land at issue. *See Prater v. United States, cited supra,* 618 F.2d 263 (5th Cir.1980). For this further reason, jurisdiction cannot lie on this basis.

 The Borough also asserts that 28 U.S.C. Section 2410 provides a basis for finding a waiver of sovereign immunity and thereby allows the action to proceed in federal district court. *See Hudson County Board of Chosen Freeholders v. Morales,* 581 F.2d 379, 382–383 (3d Cir.1978). Section 2410 contemplates a waiver of the government's sovereign immunity in actions to quiet title to, foreclose lien upon, partition, condemn or interplead "property on which the United States has or claims a mortgage or other lien." *See Morales* case, at Page 383. The statute further requires that "the complaint set forth with particularity the nature of the lien of the United States." Since the complaint, as well as the record as a whole, fails to reveal the existence of a lien held by the government, the Borough has failed to establish that the Congress has waived sovereign immunity on this statutory basis and, therefore, the Court lacks jurisdiction to hear its claim against the United States.

In addition, I find that this Court lacks subject matter jurisdiction to resolve the Borough's claims against the remaining defendants. The complaint does not reveal the existence of a federal question and

there is no diversity between the parties. Therefore, this Court lacks jurisdiction over the controversy captioned *Borough of Maywood v. United States* and, therefore, I will grant movants' motion to dismiss that suit.

■ I will now address the motion of DOE and Stepan for summary judgment with respect to their actions against the Planning Boards of Maywood and Rochelle Park. Their primary argument in support of summary judgment is that the Congress' directive to clean up the Maywood site preempts all local ordinances which impede the completion of the project.

The supremacy clause of the constitution invalidates all state laws that conflict or interfere with an act of Congress. *See Rose v. Arkansas State Police*, 479 U.S. 1, 107 S.Ct. 334, 335, 93 L.Ed.2d 183 (1986). Specifically, under this clause, the "Constitution and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land." United States Constitution, Article VI, Clause 2.

To determine whether a state statute or local ordinance is preempted by federal law and, therefore, invalid under the Supremacy Clause of the Constitution, the Court must ascertain the intent of Congress with respect to whether Congress intended that federal law supersede state law. *See e.g., California Federal Savings & Loan Association v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987); *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985).

In *Guerra*, the Supreme Court summarized the three ways in which a federal law may supersede state law. First, Congress may "preempt state law by so stating an express terms." *See Guerra, supra.*

Second, "Congressional intent to preempt state law in a particular area may be inferred where the scheme of federal regulation is so comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Id.* It is without a doubt that Congress may enact a pervasive scheme that "may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject or because the object sought to be obtained by the federal law" and the resulting obligation may reveal the same purpose. *See Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (*quoting, Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed.2d 1447 (1947)).

Third, in an area in which "Congress has not completely displaced state regulation, federal law may nevertheless preempt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because compliance with both federal and state regulation is a physical impossibility" or because the state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Guerra, supra*, 107 S.Ct. at 689 (citations omitted).

As the Supreme Court in *De La Cuesta* observed .

"These principles are not inapplicable here simply because real property law is a matter of special concern to the states: The relative importance to the statement of its own law is not material when there is a conflict with a valid federal law, for the framers of our Constitution provided that federal law must prevail."

*See De La Cuesta, cited supra*, 458 U.S. at 153, 102 S.Ct. at 3022, (quotation marks and citations omitted).

Thus, to determine whether the Congressionally endorsed purchase of the Stepan property is subject to local ordinances, I must examine the federal directive, Congressional intent and competing local regulations.

Title III of the Energy and Water Development Appropriations Act for fiscal year 1984, Public Law 98–50, and its successor for fiscal years 1985 and 1986, embody the environmental goals of Congress and the administration with respect to the activities of the Department of Energy. *See eg.,* 131 Congressional Record H8855–56, 8863 (dai-

ly ed. October 17, 1985); 131 Congressional Record S 10685 (daily ed. August 1, 1985).

The remarks and statements of the legislators reflect their intent to appropriate funds for various environmentally related projects. For example, Congress specifically appropriated funds to facilitate the decontamination of the Stepan site. *See eg.,* 129 Congressional Record S 8910–11 (daily ed. June 22, 1983) (remarks of Senators D'Amato and Bradley); 131 Congressional Record H 5710 (daily ed. July 16, 1985) (remarks of Representatives Torricelli and Bevill). Upon discovery that the thorium waste stored at the site had secreted onto surrounding properties, Congress authorized the DOE to "give first priority to the clean up of ... [among other things] ... the Stepan Chemical site in Maywood, New Jersey and vicinity residences." H.R. Rep. No. 98–217, 98th Congress, 1st Session, 80 (1983). *See also,* 129 Congressional Record H 4614 (daily ed. June 23, 1983).

To achieve this end, the appropriation acts for fiscal years 1984, 1985 and 1986, authorized the secretary of the DOE to acquire real property so as to fulfill the objectives of the Department of Energy Organization Act, 42 U.S.C. Section 7101, et seq. *See* F. Skillern, *Environmental Protection,* Section 8:12 (1981) for a brief discussion of the purpose of that act.

Broadly construed, the act, through the appropriations process, empowers the DOE to, among other things, establish environmental improvement programs, such as those aimed at the decontamination of real property infested with radioactive waste. In the case of the Stepan site, the DOE "negotiated an agreement with Stepan Chemical to accept a donation of land for the purpose of temporarily storing contaminated materials from residential property." 131 Congressional Record, *cited supra,* H 5610. This cooperative agreement governs the land donation and DOE's subsequent activities on the site. These activities are also described in the Memorandum of Understanding executed between Maywood and the DOE.

While none of the relevant federal statutes embody an express statement that local actions are preempted and although the scheme under which the clean up is to occur may leave some room of supplementary local regulation, it is clear that the decision of the local planning boards' conflicts with Congress' clean-up directive and impedes achievement of this end. *See Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 186–187 (3d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987) in which the Court of Appeals stated that absent express preemption of a finding that Congress' actions were taken to institute a pervasive federal program, the Court must next turn to whether the local regulation conflicts with the federal law. The purpose of the federal directive and the effect of the operation of the regulation at issue illustrate the existence of an actual, rather than potential, conflict between federal and local regulation. *See Cipollone, supra. See also, Finberg v. Sullivan,* 634 F.2d 50, 63 (3d Cir.1980) (en banc); *United States v. City of Philadelphia,* 798 F.2d 81, 87 (3d Cir.1986).

As stated previously, Stepan submitted "pro forma post facto" applications for subdivision and site plan approval in accordance with the Planning and Zoning Ordinances of the Township of Rochelle Park, Chapters 58 and 61, and the Site Plan and Land Subdivision Ordinances of the Borough of Maywood, as well as Municipal Land Use Ordinances of the Borough of Maywood, Articles III and IV. These local laws require prior approval of any transfer of land involving a subdivision as well as for the construction of certain structures. The Boards have denied Stepan's applications and thereby essentially stopped the clean-up project.

Despite the fact the conveyances occurred prior to the Board's respective evaluation of the subdivision and site approval application, it is safe to assume that even if submitted prior to the conveyance, the applications would have been denied for the reasons articulated by the Boards.

In either case, the denial of the applications effectively preclude the conveyance of the land and thus impede the decontamination process. The conveyance of proper-

ty for use as a temporary storage site is an integral part of the clean-up project. Not only does the land serve as part of the consideration used in exchange for federally funded clean-up, but it also was intended to be used as a temporary repository for the waste.

Therefore, although the Congress has not expressly preempted the effect of all local ordinances and despite the fact that the DOE has continually attempted to cooperate with local authorities, as it is mindful of the important local concerns, I find that the decisions of the Planning Boards of the Township of Rochelle Park and the Borough of Maywood present an impediment to the fulfillment of Congress' clear directive to decontaminate the Maywood site. This federal mandate, as embodied in the various Energy and Water Appropriations Act, is part of a comprehensive federally funded program aimed at the resurrection of various deteriorating industrial, coastal, and environmentally unsound sites. This Stepan project therefore is part of a pervasive federal scheme which supersedes local impediments. *See also, Jersey Central Power & Light Co. v. Township of Lacey,* 772 F.2d 1103, 1112 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986), in which the Court of Appeals for the Third Circuit recognized that federal control over the clean up of the radioactive waste has been the norm and such preempts competing municipal ordinances; *Arizona v. California,* 283 U.S. 423, 451–52, 464, 51 S.Ct. 522, 524–25, 529, 75 L.Ed. 1154 (1931) in which the Supreme Court stated that given a Congressional directive, a federal agency is not obliged to submit its plans for state approval nor comply with other conflicting police regulations of a state. This idea is embodied in the cooperative agreement itself which states that Stepan need not obtain any nonfederal permits or abide by nonfederal ordinances which are preempted. *See also,* Clause (1) of the deed.

Therefore, for all of the above reasons, I find that the decision of the Local Planning Boards must be set aside since they are preempted pursuant to the Supremacy Clause of the Constitution of the United States. Since I have found that the local decisions are preempted, it makes no difference that, as a matter of state law, decisions of a local agency cannot be overturned unless arbitrary or capricious. Even if reasonable, the decisions are null and void in the face of such a clearly conflicting Congressional directive.

Moreover, I do not find issues of intent presented in this case affect my grant of summary judgment as a matter of law. Maywood essentially argues that Stepan/DOE intended to convey the property and engage in the decontamination process in a manner consistent with the local ordinances. As Stepan correctly observed, no inquiry into intent is necessary to determine that compliance with the local ordinances and decisions would impede achievement of the federally imposed clean-up objective and thus the application of the ordinances in this case must fall on preemption grounds. Therefore, the issue of intent is irrelevant and does not render inappropriate a grant of summary judgment in this case.

Although I have concluded that the doctrine of preemption requires that the conflicting local regulations must yield to Congress' mandate, the government and Stepan must be ever mindful that the clean up in which they engage is being done to improve the environmental conditions of the locality and thus must be carried out in a way that protects local interests. Therefore, the DOE is urged to proceed with the decontamination process in a speedy fashion. Should the citizenry find that they are dissatisfied with the manner in which the clean up is occurring, they are not without recourse. They may seek the support of their elected representatives. Since these individuals set forth the Congressional mandate which, in effect, conflicts with the local ordinance, it is these individuals who must serve as the guardians of the local interests in this case, not the courts.

Thus, although the law requires that I grant all motions of Stepan and the DOE for summary judgment in all three actions, I do so reminding the DOE that, while it need not comply with the local ordinances

at issue, its activities are done in the public interest and hence its actions must be taken to advance these concerns.