GARWOOD, Circuit Judge:
 

 Plaintiff-appellant Delta Savings & Loan Association, Inc. (Delta) appeals the district court’s grant of the motion of defendant-appellee Internal Revenue Service (IRS) for summary judgment on Delta’s claim that the IRS tendered an inadequate amount to Delta when it redeemed certain
 
 *249
 
 property from Delta pursuant to 26 U.S.C. § 7425(d). We determine that jurisdiction of this case is proper under 28 U.S.C. § 1346(f),
 
 [1]
 
 and we affirm.
 

 Facts and Proceedings Below
 

 The facts of this case are undisputed. The IRS held two tax liens on a house owned by Guy and Joanne Olano. The tax liens were junior to a mortgage held by Delta. During 1985, involuntary petitions under Chapter Seven of the Bankruptcy Code, 11 U.S.C. §§ 701-766, were filed by others against both Guy and Joanne Olano. Subsequently, on October 31, 1985, Delta obtained relief from the automatic stay of 11 U.S.C. § 362(a) and began foreclosure proceedings against the property. At the foreclosure sale, which was held on March 5, 1986, Delta purchased the property for $50,667 credited on the debt. On April 3, 1986, the IRS sent a letter notifying Delta that it was considering redemption of the property pursuant to 26 U.S.C. § 7425(d). On June 20, 1986, the IRS exercised its right of redemption by tendering to Delta a check in the amount of $51,660.21, which reflected the price that Delta paid for the property at the foreclosure sale plus statutory interest. Delta refused to accept the check, claiming that the IRS owed it $85,-312.52, a figure that represented the full amount of the debt that the Oíanos owed Delta (plus interest). On August 22, 1986, Delta commenced this lawsuit by filing its complaint. On that same day, Delta also filed a
 
 lis pendens.
 
 Three days later, at the public auction held by the IRS, Delta repurchased the property from the IRS for $92,000.
 

 The district court granted the motion of the IRS for summary judgment, holding that because section 362 did not preclude Delta from pursuing its deficiency claim against the Oíanos, the amount that the IRS tendered to Delta was proper. 653 F.Supp. 664. This appeal by Delta followed.
 

 Discussion
 

 Delta’s sole contention on appeal is that the redemption amount which the IRS tendered to it was inadequate under section 7425(d). Section 7425(d) incorporates by reference 28 U.S.C. § 2410(d), which provides that the redemption price shall be “the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale).” Interest at six percent per annum and certain expenses are also allowed.
 
 Id.
 
 Focusing on the language within the parentheses, Delta reasons that because involuntary petitions had been filed against the Oíanos under Chapter Seven, Delta was prevented from pursuing its deficiency claim against the Oíanos due to the section 362(a) automatic stay, and hence the obligation secured by Delta’s lien was in effect fully “satisfied” by reason of the foreclosure sale. Therefore, the amount that the IRS was required to pay Delta in order to redeem the property had to include the entire amount of the debt and not merely the
 
 *250
 
 amount that Delta paid to purchase the property at its foreclosure sale.
 

 The basic premise of Delta’s argument is that the automatic stay prevented Delta from pursuing its deficiency claim against the Olanos. Delta does not question the generally accepted interpretation of section 2410(d) first set forth in
 
 Equity Mortgage Corp. v. Loftus,
 
 504 F.2d 1071 (4th Cir. 1974). In that case, the Fourth Circuit stated:
 

 “Where the purchaser at the sale is the person whose lien is being foreclosed, the amount paid by him includes the amount of the debt underlying his lien to the extent that the lien is satisfied by the sale. Where the lien is fully satisfied, the purchaser is not to receive less than the amount due him at the time of the sale. Where the lien attaches to other property, however, or where, after the sale, the purchaser still has the right to sue for the unpaid balance of the amount due him, the amount paid does not include this unpaid balance.”
 
 Id.
 
 at 1076 (quoting S.Rep. No. 1708, 89th Cong., 2d Sess. 34,
 
 reprinted in
 
 1966 U.S.Code Cong. & Admin.News 3722, 3756).
 

 Accord Mikulec v. United States,
 
 705 F.2d 599, 601 (2d Cir.1983);
 
 see also 26 C.F.R.
 
 § 301.7425-4(b)(2)(ii) (stating that “[w]here, after the sale, the holder of the lien being foreclosed has the right to the unpaid balance of the amount due him, the amount legally satisfied by reason of the sale does not include the amount of such lien to the extent a deficiency judgment may be obtained therefor”). Nor does Delta dispute the fact that, as a general proposition, a lienholder that has not been fully paid after foreclosing on the property subject to the lien has a right under Louisiana law to pursue the debtor personally for the deficiency.
 
 See First Guaranty Bank v. Ratcliff,
 
 424 So.2d 289, 290 (La.Ct.App. 1st Cir.1982),
 
 writ denied, 432
 
 So.2d 265 (La.1983); La.Code Civ.Proc. art. 2771. Delta simply contends that the section 362(a) automatic stay prevented it from pursuing a deficiency against the Oíanos and therefore it should have received the entire amount of its debt (plus statutory interest) from the IRS when the IRS attempted to redeem the property. We disagree.
 

 The problems with Delta’s argument are essentially twofold. First, Delta is simply wrong when it contends that the automatic stay prevented it from pursuing its deficiency claim against the Oíanos. All that the automatic stay does is to force creditors and other interested parties to seek the bankruptcy court’s approval before taking certain types of action against a debtor or against property of the estate.
 
 See In re Doan’s Truck Repair, Inc.,
 
 34 B.R. 180, 183 (Bankr.D.Wyo.1983). Nothing in section 362(d) expressly limits the ability to obtain relief from the automatic stay to secured creditors seeking only to foreclose on specific property.
 
 See In re Holtkamp,
 
 669 F.2d 505, 508 (7th Cir.1982); 2
 
 Collier on Bankruptcy
 
 ¶ 362.07[1], at 362-53 (15th ed. 1987). More importantly, Delta’s argument would fail even if it had been denied relief from the automatic stay in respect to a suit against the Oíanos personally on the debt or even if section 362(d) never allowed a lift of stay for such purposes. Delta’s foreclosure did not relieve the Oíanos of their remaining obligation on their debt to Delta. Assuming there were sufficient assets in the Oíanos’ bankruptcy estate, Delta could still ultimately receive some further payment on its obligation,
 
 [2]
 
 and its failure to receive any such payment would be the result not of its foreclosure, but rather of the degree to which the Oíanos were insolvent and the debt was finally discharged in the bankruptcy proceeding.
 

 Second, Delta’s interpretation of the language of section 2410(d) is simply not consistent with the purpose of that section and section 7425(d). The reason for allowing the government to redeem property that was sold to a foreclosing superior lienholder at essentially the same price that the lienholder paid for it is not to ensure that the lienholder never realizes any loss on
 
 its loan.
 
 The secured creditor whose foreclosure does not entirely discharge the debtor’s obligation continues to bear the
 
 *251
 
 risk of the debtor’s inability to pay more than the amount of indebtedness discharged by the foreclosure. The statutory purpose is to encourage the lienholder to bid at least a fair price on the property being foreclosed by allowing the government to redeem the property at the same price that the lienholder pays for it (plus interest); if the superior lienholder pays the debtor at least a fair price, this somewhat inures to the benefit of the government as a creditor by reducing the debtor’s obligations; the government is not obliged to redeem; if the lienholder pays less than a fair price, the government in redeeming the property is able to capture any differential between the price paid and the property’s fair market value. As the Senate Finance Committee stated in its explanation of this provision:
 

 “By exercising its power of redemption the Government can purchase property sold at distress prices and resell the property at a profit. This profit, of course, is applied in satisfaction of the taxpayer’s liability. In some instances this procedure is the only means by which the Government can collect taxes due. In all instances, however, the exercise of this power, where redeemed property is sold at a profit, inures to the benefit of delinquent taxpayers.” S.Rep. No. 1708, 89th Cong., 2d Sess. 31-32,
 
 reprinted in
 
 1966 U.S.Code Cong. & Admin.News 3722, 3753.
 

 If we were to accept Delta’s interpretation of section 2410(d), it would provide no incentive for a secured creditor of a debtor to whom section 362(a) applied to bid a fair price at its foreclosure sale. On the contrary, there would be every incentive for such a creditor to bid a below-market price in an attempt to maximize its gains by reselling the foreclosed property at a substantial profit — knowing that any redemption by the government would have to be for the full amount of the debt — while also pursuing its deficiency claim against the debtor. On the other hand, under our interpretation, a creditor such as Delta could adequately protect itself, from the risk that government below-market redemption would diminish recovery of its debt, by purchasing the property at foreclosure by credit on its debt of an amount equal to the lesser of the property’s market value or the balance of the debt. Because Delta's interpretation of section 2410(d) is not mandated by the language of section 2410(d) and would frustrate the policy that Congress sought to implement in that section and in section 7425(d), we decline to adopt it.
 

 Conclusion
 

 We conclude that the amount the IRS tendered to Delta was proper in all respects. Accordingly, the judgment of the district court is
 

 AFFIRMED.
 

 [1]
 

 . Section 1346(f) provides the district courts with exclusive jurisdiction of civil actions brought pursuant to 28 U.S.C. § 2409a. Section 2409a, in turn, waives the federal government’s sovereign immunity for particular types of quiet title actions. Although this action was not formally denominated a quiet title action, we believe that it is in substance such an action, the theory being that the United States failed to acquire good title to the property in question by reason of an inadequate tender, and is therefore susceptible of jurisdiction. The IRS challenges this conclusion, arguing that because the government relinquished its ownership interest prior to being served, section 2409a is inapplicable. We disagree. In
 
 Bank of Hemet v. United States,
 
 643 F.2d 661 (9th Cir.1981), the Ninth Circuit held that where a party had filed a complaint and a
 
 its pendens
 
 but had not effected service prior to sale of the disputed property, “the presence of a waiver of sovereign immunity should be determined as of the date the complaint was filed.”
 
 Id.
 
 at 665. Here, it is undisputed that Delta filed both a
 
 its pendens
 
 and a complaint on August 22, 1986, three days before the public auction at which the property in question was sold. Thus, even though service was not effected until September 22, 1986, under the rule announced in
 
 Bank of Hemet,
 
 the presence of a waiver should be determined as of August 22, 1986. Because the government still owned the property on that date, we find that section 2409a's waiver is applicable and hence that jurisdiction is proper under section 1346(f).
 

 [2]
 

 .
 
 See
 
 11 U.S.C. § 506(a); 3
 
 Collier on Bankruptcy
 
 ¶ 506.04[1] (15th ed. 1988).