PHILLIPS, Circuit Judge:
Southwest Products Company appeals from a district court determination that the Internal Revenue Service properly redeemed certain property under section 7425 of the Internal Revenue Code. We affirm.
I
The ultimate question to be determined in this case is who now owns the property described as 1284 Laskin Road, Virginia Beach, Virginia (hereafter Laskin Road)— the party that purchased it from Southwest Products Company (Southwest), a fore *115 closing lienholder who successfully bid for the property at foreclosure, or the party that purchased it from the IRS, which as a junior lienholder claims to have redeemed the property from Southwest under I.R.C. § 7425 after the latter’s successful bid.
Southwest sold Laskin Road to Marina Lodge Associates in June 1983, receiving in part the $1.1 million note that was secured by a first deed of trust on the property. In 1985 and 1986, the IRS properly filed tax lien notices of $24,517 and $2,101 respectively against Marina Lodge’s property. These liens were junior to the first deed of trust securing Southwest’s note. Later in 1986, Marina Lodge filed for bankruptcy under Chapter 11. When the case was later converted to a Chapter 7 liquidation, Southwest obtained relief from the automatic stay provisions to begin foreclosure proceedings against Laskin Road.
After proper notice was given to the IRS, the trustee under the deed of trust offered the property for sale at public auction on June 19,1987. Southwest bought the property for $1 million.[1] Because the outstanding principal and interest of the note given to Southwest by Marina Lodge totalled approximately $1.3 million, Southwest was not required to pay anything on its bid. It was required to pay $90,000 in closing costs (expenses associated with the sale plus outstanding tax liens), however, and wrote checks to cover that amount but asked the trustee to delay cashing them because its account contained insufficient funds. Although the sales contract stipulated that settlement had to occur within 10 days of sale, the record reveals that the trustee allowed Southwest several months to attempt to acquire the necessary funds. During this time, Southwest engaged a real estate broker to find a purchaser for Las-kin Road.
On July 10, 1987, the IRS contacted Southwest, requesting information about Southwest’s expenses in connection with Laskin Road that would affect the amount that the government would have to tender upon redemption.[2] On October 9, 1987, 8 days before the government’s statutory right of redemption expired, Southwest supplied the requested information, allegedly overstating much of its associated expense. See Appellee’s Brief at 5-6. The very next day, October 10, 1987, the trustee received a federal express letter from Southwest that was dated September 10, 1987. The letter stated that “effective immediately, Southwest ... hereby withdraws its bid submitted on June 19, 1987 at the foreclosure ... due to financial difficulties” and requested that the trustee immediately hold another foreclosure sale. Neither Southwest nor the trustee notified the IRS at this point of Southwest’s intention to withdraw or its request for a new sale. Despite its letter of withdrawal, Southwest continued over the next week or two to entertain offers of purchase on Laskin Road, not telling its real estate broker until October 20 to discontinue the search for a buyer because it had withdrawn its bid.
On October 13, within the allowable time period, the IRS tendered to Southwest a redemption check of $1,020,000, which represented Southwest’s original bid price plus *116 interest from the date of the first sale. Southwest refused the tender, asserting that it could not accept the check because it had withdrawn its bid on the property and Marina Lodge Associates was therefore still the rightful owner. Nevertheless,.the IRS recorded a certificate of redemption on October 19, 1987 (122 days after the initial foreclosure sale) in the Circuit Court of the City of Virginia Beach. Notwithstanding the trustee’s receipt of notice of the redemption, the trustee held a second foreclosure sale on November 20, 1987, at which Southwest’s new bid of $1.6 million was accepted. After the IRS scheduled its own foreclosure sale of the property on December 3,1987, Southwest filed a motion for a temporary restraining order and a complaint to quiet title in district court. After a hearing on the motion, the court declined to enjoin the IRS’s scheduled sale, finding Southwest was not entitled to in-junctive relief because it had manipulated the foreclosure bidding process to thwart the IRS’s legitimate redemption rights. Specifically, the court found that
except for the manipulation of the monetary amount, Southwest was just as well off going through with the first bid [as] it would be if it had the capacity to meet its obligations under the second bid, and the Court can only conclude from that that the sole purpose of ... abandoning the first bid, or attempting to abandon-the first bid, and then bidding the property in the second time is to hump the amount up so that the United States would have a greater obligation and have to make a larger payment in order to exercise its rights under the statute.
So I find that Southwest does not come into this court with clean hands and that that is a necessary prerequisite to seeking equitable relief.
Bench Opinion, No. 87-844-N (Dec. 1, 1987). The court also concluded that an injunction was not warranted because Southwest failed to show a likelihood of success on the merits or irreparable injury if the sale were to go forward. Id. When the sale did go forward on December 3, Southwest again bid $1.6 million, but was outbid by a third party at $1.65 million.[3]
At the trial on the merits of Southwest’s complaint to quiet title, Southwest’s principal contention was that it had defaulted on its original bid and therefore was not the owner of the property when the IRS attempted redemption. It also argued that the IRS failed to obtain relief from the automatic stay in bankruptcy before holding the foreclosure sale on December 3, 1987, and that it attempted to redeem the property outside the 120-day time limitation. The district court rejected Southwest’s arguments, holding that the IRS properly redeemed the property. The court reasoned that (1) Southwest’s attempt to withdraw its bid was ineffective; (2) the IRS did not need to obtain relief from the bankruptcy stay because the trustee had already obtained relief to conduct the original sale, removing the property from the bankruptcy estate; and (3) the IRS’s tender of the check within the 120-day period, not the recordation of the redemption certificate, satisfied the requirements of section 7425(d). Memorandum Opinion, No. 87-844-N (Nov. 10, 1988).
This appeal followed.[4]
II
Southwest’s primary argument is that the IRS did not properly redeem the property from Southwest because Southwest had defaulted on its bid and thus was not the property owner at the time of attempted redemption. According to Southwest, “[t]he IRS can only prevail in this action if [we] allow[] the district court to re-write [sic] the real estate laws to allow conveyance of real property upon the agreement *117 to convey property.” Appellant’s Brief at 9. We disagree.
The Tax Code provides that “[i]n the case of a sale of real property[,] to satisfy a lien prior to that of the United States, the [IRS] may redeem such property within ... 120 days from the date of such sale....” I.R.C. § 7425(d)(1). The applicable Treasury Regulations further explain that, in the case of divestment of junior liens on property resulting from a nonjudicial public sale, “the date of sale is deemed to be the date the public sale is held, regardless of the date under local law on which junior liens on the property are divested or the title to the property is transferred.” Treas.Reg. § 301.7425-2(b)(1) (emphasis added).
In this context then, the government’s right of redemption is not triggered by the transfer of the property’s title. Rather, it is triggered by the occurrence of the “sale” at the public auction. Of course, it is axiomatic that the right cannot be exercised against a party that does not have an interest in the subject property. So, even if the IRS properly responded to the notice of sale by seeking redemption, the redemption would be ineffective if the IRS tendered the check to the wrong party. We have concluded, however, that, despite Southwest’s assertion that its failure to pay the outstanding closing costs prevented the acquisition of any redeemable interest, Southwest possessed an interest in Laskin Road to which the IRS could succeed upon redemption. While it is true that Virginia law requires a deed to transfer legal title to real property, see Va.Code § 55-2, when the trustee “knocked the land down to [Southwest],” made a memorandum of sale and signed it, the sale was complete, In Re Rolen, 39 B.R. 260, 264 (W.D.Va.1983), and Southwest acquired an equitable interest in Laskin Road. Abdelhag v. Pflug, 82 B.R. 807, 810 (E.D.Va.1988); Ryland Group, Inc. v. Wills, 229 Va. 459, 331 S.E.2d 399, 402-03 (1985). Thus when the government tendered the check to Southwest, it stepped into Southwest’s shoes as purchaser and acquired that interest. See Olympic Fed. Sav. & Loan Ass’n v. Regan, 648 F.2d 1218, 1220-21 (9th Cir.1981).[5] Redemption under § 7425 then was complete, and the government only had to record a certificate of redemption, which it did, to evidence the transaction and to record title to the property in the United States. See I.R.C. § 7425(d)(3)(C).[6]
As the IRS points out, if we accepted Southwest’s argument, we would be allowing foreclosing lienholders to thwart the clear legislative intent of section 7425. Ap-pellee’s Brief at 21-22. Congress specified the amount that the IRS must pay for redemption — basically the amount paid by *118 the senior lienholder, plus interest and maintenance expenses, see Treas.Reg. § 301.7425-4(b) — so that “the Government [could] purchase property at distress prices and resell the property at a profit,” applying the profit to the taxpayer’s liability. Delta Savings & Loan Ass’n v. IRS, 847 F.2d 248, 251 (5th Cir.1988) (quoting S.Rep. No. 1708, 89th Cong., 2d Sess., at 31-32). “[I]f the superior lienholder pays the debt- or at least a fair price, this somewhat inures to the benefit of the government as a creditor by reducing the debtor’s obligations.” Delta Savings, 847 F.2d at 251. But “if the lienholder pays less than a fair price, the government in redeeming the property is able to capture any differential between the price paid and the property’s fair market value.” Id. Allowing bid withdrawal followed by renewed bidding at a second sale would encourage foreclosing lienors, in states permitting deficiency judgments, to bid low initially in hopes of obtaining deficiency judgments and reselling at the higher market value, but to withdraw the low bid if the IRS seeks redemption, bidding higher at the second sale to thwart any redemption efforts. Accord id. (rejecting the argument that under § 7425 redemption by the government must be for the full amount of the debt because it would encourage low-bidding). This conflicts with the statutory purpose of encouraging foreclosing lienholders to bid' at least a fair price on the property being foreclosed.
Additionally, were we to hold that the IRS could seek redemption only after the purchaser at foreclosure met all of its contractual obligations — in this case paid the closing costs — redemption within the permissible 120 days after the public sale could be easily frustrated by an uncooperative foreclosing lienholder. This too would conflict with congressional intent.
III
Southwest next argues that the IRS’s redemption from Southwest was an attempt to circumvent the automatic stay imposed when Marina Lodge filed for bankruptcy. As the district court held, however, section 362(a) of the Bankruptcy Code generally bars creditors from taking certain actions against the debtor, its property or the property of the bankruptcy estate. See generally 2 Collier on Bankruptcy ¶1¶ 362.01 & .04 (15th ed. 1988). At the time the IRS redeemed the property here, however, it was already outside the bankruptcy estate. The trustee had obtained relief from the stay to conduct the original foreclosure sale. Thus when Southwest entered into the contract for sale at the public auction, the interest it acquired was not subject to the stay. Consequently, neither was the interest the IRS redeemed.
IV
Finally, Southwest argues that the filing of the certificate of redemption six days after the 120 day limit invalidates the redemption. The Code and relevant regulations suggest, however, that the certificate of redemption serves merely to evidence that redemption occurred and to transfer legal title of the redeemed interest. See I.R.C. § 7425(d);[7] Treas.Reg. § 301.7425-4(c)(3). Nothing indicates that *119 the filing must occur within the limitation — only that the act of redemption must. I.R.C. § 7425(d)(1). The statute only requires that the certificate be filed “without delay.” Section 7425(d)(3)(B). We conclude that the statute is satisfied if the government redeems within the 120-day period and a proper notice of redemption is filed “without delay” — whether within or without the relevant time limitation — in the appropriate location.
For all the foregoing reasons, we affirm.
AFFIRMED.

. Although the redemption provisions of § 7425 do not apply if the foreclosure sale does not ultimately discharge the property from the tax lien, see Treas.Reg. § 301.7425-4(a)(3), they apply here because under Virginia law junior liens — such as the tax lien in this case — are discharged at the time of sale.

. When the government exercises its right to redeem under section 7425, it must pay the sum of the following amounts:
(i)the actual amount paid for the property being redeemed (which in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent legally satisfied by reason of the sale);
(ii) interest on the amount paid;
(iii) the amount, if any, equal to the excess of the expenses necessarily incurred to maintain such property by the purchaser ... over the income from such property realized by the purchaser plus a reasonable rental value of such property (to the extent the property is used by the purchaser or is rented at less than its reasonable rental value).
See I.R.C. § 7425(d)(2); 28 U.S.C. § 2410(d); Treas.Reg. § 301.7425-4(b)(l)-(3). See also Equity Mortgage Corp. v. Loftus, 504 F.2d 1071 (4th Cir.1974) (considering scope of redemption price under 28 U.S.C. § 2410).

. Because the amount realized was in excess of the amount of taxes due, and the taxpayer was still in bankruptcy, the Bankruptcy Court ordered that the excess proceeds be returned to the bankruptcy estate if we affirm the district court’s determination that the IRS properly exercised its right of redemption.

. The Chapter 7 Bankruptcy Estate of Marina Lodge Associates, the initial purchasers of Las-kin Road from Southwest, filed an amicus brief in support of the IRS’s position.

. The Ninth Circuit reasoned that the Tax Code’s requirement that the IRS pay the redemptionee interest and maintenance expenses incurred during the pre-redemption period implies that the IRS in effect steps into the redemptionee’s shoes, taking whatever interest it acquired at the foreclosure sale. Id. at 1220 (citing Plumb, Federal Liens and Priorities — Agenda for the Next Decade, 77 Yale L.J. 1104, 1180 (1967) (§ 7425 redemption puts government in shoes of purchaser at execution sale); 33 C.J.S., Executions § 263, at 552 (1941) (in most jurisdictions, non-debtor redemptioners succeed to whatever right, title or interest the purchaser acquired as if it were the purchaser).

. The government also argues that Southwest’s attempted withdrawal failed because the trustee lacked the authority to allow escape from the bid or to conduct a second foreclosure sale. Though it is not dispositive here, we reject this position. There is no question that trustees may not perform at the direction of purchasers, see, e.g., Feldman v. Rucker, 201 Va. 11, 109 S.E.2d 379, 386 (1959) ("The only power remaining in the trustee [after the sale], so far as the purchaser is concerned, was to collect the purchase money and execute a proper deed_” (emphasis added)); Powell v. Adams, 179 Va. 170, 18 S.E.2d 261, 263 (1942) (concluding that trustees had no power, express or implied, to have the sale property surveyed at purchaser’s request). It is equally unquestionable, however, that trustees, as agents of both the debtors and creditors in foreclosure situations, have the authority to resell the property with reasonable promptness after the initial purchaser fails or refuses to comply with his bid. Definite Contract Building & Loan Ass’n v. Tumin, 158 Va. 771, 164 S.E. 562 (1932). If the first purchaser has received notice of the resale, it is conducted at his risk and conclusively fixes the damages for his breach. Id. (The resale must be conducted fairly and in accordance with the same terms and conditions as those prescribed for the original sale.).

. The statute more fully provides that
In any case in which real property is redeemed by the United States pursuant to this subsection, the Secretary shall apply to the officer designated by local law, if any, for the documents necessary to evidence the fact of redemption and to record title to such property in the name of the United States. If no such officer is designated by local law or if such officer fails to issue such documents, the Secretary shall execute a certificate of redemption therefor.
The Secretary shall, without delay, cause such documents or certificate to be duly recorded in the proper registry of deeds. If the State in which the real property redeemed by the United States is situated has not by law designated an office in which such certificate may be recorded, the Secretary shall file such certificate in the office of the clerk of the United States district court for the judicial district in which such property is situated.
A certificate of redemption ... shall constitute prima facie evidence of the regularity of such redemption and shall, when recorded, transfer all the rights, title, and interest in and to such property acquired by the person from whom the United States redeems such property by virtue of the sale of such property.
I.R.C. § 7425(d)(l)-(3) (subheadings omitted).