IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30657
_____

JERON J. LAFARGUE;  SUSAN KYLE, on behalf of
themselves and all others similarly situated; RONALD
RICHARD, JR.; SEPTIME RICHARD, JR.; WINNIFRED
RICHARD CHAMPAGNE; SHARON RICHARD BIGGS;
SIDNEY J. RICHARD, JR., ARTHUR H. OWENS;
PRUDENCE LAFARGUE BURNS; HOPE RICHARD
SANSING; RICHARD WAYNE OWENS; SHAYNE OWENS
BELL; BARBARA VEEDER MCKOIN; CAROL VEEDER
WOMMER; DIANE SIMONS LOVELL,

                                                          Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA; LOUISIANA
INTRASTATE GAS COMPANY, L.L.C.,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana
(97-CV-2393-R)

_____

August 16, 1999

Before REAVLEY, JOLLY and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:[*]

The district court's judgment dismissing appellants' complaint is affirmed for the following

reasons.

A.    *Jurisdiction*

The United States contends that the district court lacked subject matter jurisdiction under the

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Quiet Title Act. We must address this jurisdictional challenge even if there is an alternative, simpler ground for affirmance on the merits.[1] Further, we cannot agree with appellants that we lack appellate jurisdiction to address the government's challenge to the district court's subject matter jurisdiction because the government did not file a notice of appeal. "Even though an appellee has not filed a cross appeal, he may take the position on appeal that the record supports the court's judgment on any ground, including one rejected or ignored in the lower court."[2] In addition, we have a duty to consider, *sua sponte* if necessary, the basis of the district court's jurisdiction.[3]

Under the Quiet Title Act, 28 U.S.C. § 2409a, "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest."[4] The federal district courts have exclusive jurisdiction of civil actions under the Act.[5] However, under the disclaimer provision of the Act: "If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title."[6]

The United States argues that, after this suit was filed and the sale of the pipeline to Louisiana Interstate Gas Company (LIG) was completed, it filed with the district court a disclaimer of any interest in the pipeline, thereby divesting the court of jurisdiction under the disclaimer provision. As we interpret this provision, the government can disclaim any interest in the property that is the subject

---

[1] *See United States v. Texas Tech Univ.*, 171 F.3d 279, 286-87 (5th Cir. 1999) (discussing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).

[2] *Hoyt R. Matise Co. v. Zurn*, 754 F.2d 560, 565 n.5 (5th Cir. 1985).

[3] *See Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1132 n.2 (5th Cir. 1987).

[4] *Id*. § 2409a(a).

[5] *See* 28 U.S.C. § 1346(f).

[6] 28 U.S.C. § 2409a(e).

of the quiet title action and thereby divest the district court of jurisdiction, but this provision does not apply where the district court had jurisdiction at the commencement of suit and the government thereafter takes affirmative steps to transfer its interest in the subject property. We follow this interpretation for several reasons. First, the language of the disclaimer provision manifests congressional intent to provide the courts with some flexibility in applying the provision, since it provides for a cessation of jurisdiction only if the government's disclaimer is "confirmed by order of the court," rather than requiring dismissal in a mechanical fashion upon the filing of a disclaimer by the government. Second, the government's interpretation of the disclaimer provision would lead to a waste of judicial resources. So long as the government owned or had an interest in the pipeline, any quiet title action had to be brought in federal district court. To force a plaintiff to sue in federal court, and then require the court to dismiss the suit once the government sells the property in question, strikes us as a strained and inefficient result that we do not believe Congress intended. In the words of the Ninth Circuit, our interpretation of the disclaimer provision "permit[s] the [plaintiff] to have its day in court, [and] also restrains any tendency on the part of the government to manipulate its position subsequent to the filing of the complaint so as to present a situation that falls between the cracks of applicable waiver statutes."[7] While we accept the government's contention that the sale of the pipeline was not in response to the suit, our interpretation of the statute is consistent with the general rule that subject matter jurisdiction is determined at the time the complaint is filed.[8] "Importantly, the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached."[9]

Our interpretation is also consistent with our decision in *Delta Savings & Loan Association v. IRS*.[10] In *Delta Savings*, a lender had foreclosed on a house owned by a bankruptcy debtor. The

---

[7] *Bank of Hemet v. United States*, 643 F.2d 661, 665 (9th Cir. 1981).

[8] *See Carney v. RTC*, 19 F.3d 950, 954 (5th Cir. 1994).

[9] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253-54 (5th Cir. 1998).

[10] 847 F.2d 248 (5th Cir. 1988).

IRS exercised a statutory right of redemption of property the plaintiff-lender had acquired through foreclosure. The lender sued the IRS. The main issue, not relevant here, was whether the IRS had made an adequate tender to the lender. The IRS also claimed that the district court had no jurisdiction. In a footnote, we held that the court had jurisdiction under the Quiet Title Act, even though the IRS had sold the house prior to being served:

> Although this action was not formally denominated a quiet title action, we believe that it is in substance such an action, the theory being that the United States failed to acquire good title to the property in question by reason of an inadequate tender, and is therefore susceptible of jurisdiction. The IRS challenges this conclusion, arguing that because the government relinquished its ownership interest prior to being served, section 2409a is inapplicable. We disagree. In *Bank of Hemet v. United States*, 643 F.2d 661 (9th Cir.1981), the Ninth Circuit held that where a party had filed a complaint and a *lis pendens* but had not effected service prior to sale of the disputed property, "the presence of a waiver of sovereign immunity should be determined as of the date the complaint was filed." *Id*. at 665. Here, it is undisputed that Delta filed both a lis pendens and a complaint on August 22, 1986, three days before the public auction at which the property in question was sold. Thus, even though service was not effected until September 22, 1986, under the rule announced in *Bank of Hemet*, the presence of a waiver should be determined as of August 22, 1986. Because the government still owned the property on that date, we find that section 2409a's waiver is applicable and hence that jurisdiction is proper under section 1346(f).[11]

Factually, in the pending case the complaint was filed and the government was served before the sale of the pipeline, while in *Delta Savings* and *Bank of Hemet*, the suit had been filed but the government had not been served before the government sold the property in issue. Regardless, the principle followed in *Delta Savings* and *Bank of Hemet* is the general principle that jurisdiction should be determined on the facts as they existed when the complaint was filed. By this reasoning, the district court correctly held that it had jurisdiction because the government still owned the pipeline at the time the suit was filed.

The government points out that in *Delta Savings* and *Bank of Hemet* it did not disclaim all interest in the property under the disclaimer provision of the Act. While the disclaimer provision is not cited in these decisions, in both the government plainly argued that the district court lacked subject matter jurisdiction because the property in issue had been sold by the government subsequent

---

[11] *Id*. at 249 n.1.

to suit.[12]  The key concept recognized in *Delta Savings*, consistent with general principles of jurisdiction, is that "'the presence of a waiver of sovereign immunity should be determined as of the date the complaint was filed'"[13]  We therefore agree with the district court that it had subject matter jurisdiction.

B.      *Ownership of the Servitude*

As we understand appellants' position, they argue that the decommissioning of the pipeline by the government for use in supplying petroleum to the Weeks Island facility, a Strategic Petroleum Reserve Program (SPRP) facility, amounted either to an "abandonment" of the pipeline, or the occurrence of a resolutory condition of the servitude.  Under either theory, appellants contend that, under the servitude they granted to the government, the ownership of the servitude and pipeline reverted to them.

We have recently held that the Quiet Title Act should be interpreted "in accordance with principles of federal law," and, "while courts may properly look to state law as an aid in determining the application of statutory language to specific facts, such state law should be compatible with the purpose of the legislation so as to find the rule that will best effectuate federal policy."[14]

The parties cannot agree whether the Donation of Servitude and Easement, sometimes referred to as the Richard Donation, created a predial or personal servitude under Louisiana law.  We do not see this issue as dispositive.[15]  We think instead that general principles of contract and property law, recognized in Louisiana and elsewhere, should guide our decision.  General contract law should

---

[12] *See id.* (noting that IRS challenged jurisdiction "because the government relinquished its ownership interest prior to being served"); *Bank of Hemet*, 643 F.2d at 664.

[13] *Delta Savings*, 847 F.2d at 249 n.1 (quoting *Bank of Hemet*, 643 F.2d at 665).

[14] *Bank One Texas v. United States*, 157 F.3d 397, 403 (5th Cir. 1998) (internal quotation marks, citations, and alterations omitted), *cert. denied*, 119 S. Ct. 1761 (1999).

[15] *See Heirs of Primeaux v. Erath Sugar Co.*, 484 So. 2d 717, 720 (La. Ct. App. 1986) (noting that conveyance of land by landowner to sugar company for use as a site for a sugar refinery, and with right of reversion to heirs if refinery ceased operations, could be characterized  as "a conventional predial servitude" or "could equally be termed a limited personal servitude").

5

govern construction of the servitude, whether it is characterized as a predial or personal servitude.[16]

Questions concerning the construction or interpretation of contracts are questions of law and are accordingly reviewed de novo.[17]

Louisiana law recognizes that a servitude on real property can contain a reversionary interest in favor of the donor or vendor, a form of "resolutory condition."[18] The Richard Donation expressly provides that the servitude granted the government terminates upon "abandonment." However, we cannot agree with appellants that the government's sale of the pipeline amounted to an abandonment of it. First, Louisiana courts, consistent with the generally

accepted usage of the term, recognize that abandonment implies the relinquishment of property without vesting ownership in another.[19] Selling the pipeline to LIG was not such an act.

Second, characterizing the sale of the pipeline to LIG as an abandonment of it would, by

---

[16] *See Brown v. Rougon*, 552 So. 2d 1052, 1056 (La. Ct. App. 1989) (holding that right-of-way deed is "subject to the general rules for the interpretation of contracts"); *Ryan v. Monet*, 666 So. 2d 711, 714 (La. Ct. App. 1995) ("A document purporting to create a predial servitude is interpreted in accordance with both the general rules of contract construction as well as in accordance with specific rules of construction for instruments that purport to create servitudes."); La. Civ. Code art. 645 (providing that personal servitudes are regulated by rules governing predial servitudes to the extent their application is compatible with rules governing personal servitudes); *Heirs of Primeaux*, 484 So. 2d at 720 (noting that personal servitudes are governed by laws of ususfruct and predial servitudes). We also note that the assignability of a servitude is not necessarily affected by a characterization of the servitude as a personal servitude, as opposed to a predial servitude, the latter being generally analogous to a covenant running with the land under Anglo-American common law, *see* La. Civ. Code art. 650 ("A predial servitude is inseparable from the dominant estate and passes with it"), since personal servitudes are assignable under Louisiana law. *See* La. Civ. Code art. 643.

[17] *See L & A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 109 (5th Cir. 1994).

[18] *See Heirs of Primeaux*, 484 So. 2d at 721 (noting that "[t]he jurisprudence of Louisiana has long recognized reversionary interests in real property" and describing such reversionary interests as a form of resolutory condition); La. Civ. Code art. § 773 (providing that predial servitude established under a resolutory condition expires upon the happening of the condition).

[19] *See Taussig v. Goldking Properties Co.*, 495 So. 2d 1008, 1016 (La. Ct. App. 1986) ("'"Abandonment" of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person.'") (quoting *Salim v. Louisiana State Bd. of Educ.*, 289 So. 2d 554, 560 (La. Ct. App. 1974)). *See also* BLACK'S LAW DICTIONARY 2 (5th ed. 1979) (defining abandonment as "[t]he voluntary relinquishment of possession of thing by owner with intention of terminating his ownership, but without vesting it in any other person").

appellants' interpretation of the instrument, render the pipeline unassignable. Any effort to assign the pipeline to another, by sale or otherwise, would cause the government's ownership of the servitude to terminate. Under the terms of the Richard Donation, abandonment of the easement results in its termination; termination puts the government to the option of removal of the pipeline or "abandonment in place," which results in the reversion of the pipeline to the donors. Either way, the government could not assign the pipeline and servitude to a third party. Such an interpretation squarely conflicts with other provisions of the Richard Donation, which provide that the donors are conveying to the United States "and its assigns" "a perpetual and assignable easement and right-of-way," and that the "perpetual rights . . . of the easement and/or servitude" are conveyed to the United States "and its assigns . . . forever . . . ." An interpretation that renders an assignment of the pipeline to a third party an "abandonment" of it therefore runs afoul of basic rules of contract interpretation. Under Louisiana law, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[20] Contract provisions should be interpreted "to avoid neutralizing or ignoring any of them or treating them as surplusage."[21]

Alternatively, appellants argue that the servitude terminated because, under its provisions, a termination occurs if the government (or an assignee) stops using the pipeline as part of the SPRP. True, the Richard Donation states that the conveyance of the easement and right-of-way is made to the government "for the location, construction, [etc.] of a single pipeline in the establishment, management, and maintenance of the Strategic Petroleum Reserve." The Donation goes on to state that the servitude "is acquired by the United States of America for and in connection with the Department of Energy's Strategic Oil Storage Program," and that the donation is made "in consideration of Grantors' desire to aid their country in the establishment of a Strategic Petroleum

---

[20] La. Civ. Code art. 2050. *See also Heirs of Primeaux*, 484 So. 2d at 720-21 ("The rule of interpretation is that effect must be given to all of the stipulations in an instrument, if possible, in order to give full effect to the intention of the parties, after viewing the document as a whole.").

[21] *Lambert v. Maryland Cas. Co.*, 418 So. 2d 553, 559 (La. 1982).

Reserve and in further consideration of the Grantee's agreement to construct and operate said pipeline." While we admire appellants' patriotic motive and commend their generosity, we must agree with the district court that the Donation did not provide for termination in the event the government ceases operating the pipeline as part of the SPRP. Examining the document as a whole, there are specific grounds for termination of the servitude, including ten years of non-use, abandonment, as discussed above, and the failure of the government to commence construction of the "Strategic Petroleum Reserve pipeline" by December 1, 1981. The Donation, however, did not provide for termination if, after construction and use of the pipeline as a part of the SPRP, the use of the pipeline changed. While the Donation does state that it is made for the construction of a pipeline "in the establishment . . . of the Strategic Petroleum Reserve" and expresses the grantor's desire to aid "in the establishment of a Strategic Petroleum Reserve," it does not provide for a reversion to the grantors if in the future the original purpose has been fulfilled but the pipeline's use as a part of the SPRP comes to an end. Given this lack of an express cause for termination upon a change in the use of the pipeline, we cannot interpret the Donation to provide for an implied termination on this basis. As one court has explained:

> The jurisprudence of Louisiana has long recognized reversionary interests in real property. The failure of the donor or vendor to reserve expressly a right of reversion constitutes a divestiture or abandonment of any such right; in the absence of a reversionary clause the heirs or assigns of the donor or vendor cannot set aside the transfer or repossess the property because of a failure by the donee or vendee to use the property for the restrictive purposes for which it was sold.[22]

Further, appellants' request that we read an implied additional ground for termination into the instrument is all the more untenable given the express language of the donation, quoted above, which provides for the conveyance of a "perpetual" and "assignable" servitude. Given this general language of conveyance – "perpetual" is used three times, "assigns" is used twice, "forever" and "assignable" are used once – we cannot construe the Donation to provide for this additional, unstated, ground for termination.

---

[22] *Heirs of Primeaux* 484 So. 2d at 721 (citations omitted).

8

We also find persuasive three cases from other jurisdictions where property interests were conveyed to the United States for life-saving stations.[23] The instruments conveying the property interests stated that the purpose of the conveyances was the establishment of life-saving stations.[24] However, like the pending case, the conveyances did not expressly provide that the property interests reverted to the original grantors if the purpose or use of the property changed. The plaintiffs claimed that conveyances terminated after the use of the land in issue changed. In each case, the court ruled that the property interests did not revert to the grantor. In two of the cases, the courts reasoned that "'[t]he mere recital in the deed of the purpose for which the land conveyed was to be used is not in itself sufficient to impose any limitation or restriction on the estate granted.'"[25] In the third case, the court reasoned that "[d]eed language alleged to create a determinable fee is strictly construed, to avoid a forfeiture," and declined "to construe the language of purpose contained in this deed as an expression of intent to return the property to the grantor when the purpose has been exhausted or satisfied."[26] We essentially agree with the reasoning of these cases.

C.    *Supplemental Jurisdiction*

Appellants complain that the district court erred in declining to exercise supplemental jurisdiction over a state law claim asserted by some plaintiffs for lesion beyond moiety. This claim, essentially a state law claim for rescission based on inadequate consideration,[27] involves separate right-of-way agreements these plaintiffs entered into with LIG. LIG entered into these agreements to foreclose claims by the plaintiffs that LIG had not acquired good title to the servitude discussed

---

[23] *See United States Trust Co. v. New Jersey*, 543 A.2d 457 (N.J. Super. Ct. App. Div. 1988); *Lethin v. United States*, 583 F. Supp. 863 (D. Or. 1984); *Selectmen of the Town of Nahant v. United States*, 293 F. Supp. 1076 (D. Mass. 1968).

[24] *United States Trust Co.*, 543 A.2d at 459; *Lethin*, 583 F. Supp. at 865-66; *Town of Nahant*, 293 F. Supp. at 1077.

[25]  *Lethin*, 583 F. Supp. at 871 (quoting *Town of Nahant*, 293 F. Supp. at 1078).

[26] *United States Trust Co.*, 543 A.2d at 462.

[27] *See* La. Civ. Code art. 2589.

above.  Appellants concede that if we affirm the district court's summary judgment in favor of the government and LIG, agreeing with the district court that the servitude did not terminate and revert to the plaintiffs, then the state claim is moot.[28]  We agree.

D.      *Denial of Motion to Compel*

Appellants argue that the district court erred in denying a motion to compel production from the government of a document discussing the government's sale options for the pipeline.  The government claimed attorney-client privilege.  Plaintiffs concede that the document in issue is "a legal analysis."  The government contends that the district court denied the motion to compel because it was filed after the discovery cutoff and the document was irrelevant to the court's interpretation of the Richard Donation, while appellants maintain that the motion was timely.      "The trial judge's decision to curtail discovery is granted great deference and, thus, is reviewed under an abuse of discretion standard."[29]  There was no abuse of discretion.  The district court decision, and our own, turn on the law and the language of the Richard Donation itself.  The government's prior analysis of the legal issues presented is irrelevant.

AFFIRMED.

---

[28] *See* appellants' opening brief at 47 (stating that "if the Plaintiffs do not have title to the pipeline due to the termination of the Richard Donation and the abandonment of the pipeline, the Plaintiffs' lesion claim is moot").

[29] *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 918 (5th Cir. 1992).

EMILIO M. GARZA, Circuit Judge, dissenting:

The district court was stripped of subject-matter jurisdiction over the plaintiffs' Quiet Title Act ("QTA") claims.[28] The QTA's disclaimer provision states:

> If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.

28 U.S.C. § 2409a(e). The Government, pursuant to this provision, filed a disclaimer of any interest in the pipeline before the trial of this case actually commenced. As there was no other jurisdictional basis for the QTA claims, the district court at this point should have confirmed the disclaimer,[29] and dismissed the QTA claims for lack of subject-matter jurisdiction.

Accordingly, I dissent.

---

[28] The district court concluded that counts I through V of the complaint arise solely under the QTA. The plaintiffs do not appeal this holding.

[29] I agree with the Government that confirmation "formalize[s] by court order the disclaimer . . . so that the disclaimer may be relied upon by others." We must construe the disclaimer provision, as a condition to a waiver of sovereign immunity, strictly in favor of the Government. *See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287, 103 S. Ct. 1811, 1819, 75 L. Ed. 2d 840, ___ (1983) (QTA) ("when Congress attaches conditions to legislation waiving sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied"). This rule of construction requires us to interpret the disclaimer provision in a way that maximizes the extent of the Government's ability to disclaim. To satisfy this mandate, we must conceptualize confirmation as a ministerial function, and not a discretionary function, of the district court. *But see W. H. Pugh Coal Co. v. United States*, 418 F. Supp. 538, 539 (E.D. Wis. 1976) (indicating that the district court should refuse to confirm when the Government disclaims in bad faith).